On behalf of the state, Mr. Scott Jacobson, on behalf of the athlete, Ms. Kim Dilley. Thank you, Mr. Jacobson. Good morning, Your Honors. I'd like to begin by thanking you all for allowing me to substitute for Mr. Hoffman. He is recovering quite nicely and is in good spirits. Give him our best wishes. Absolutely. That said, turning to the matter before this court, there is only, in the state's opinion, there is only one position for this court to take. Can you say that capitally? I do. I believe given the nature of... Well, yeah, it's a true statement. There is one position we're going to take. And I hope that it is both mine and that you consider it the correct one. I believe the trial court below made an improper ruling and used that ruling to prevent the state from preventing the testimony of the key witness in the case against the defendant. I believe the decision... What is the scope of the motion in limine? The scope of it? The scope of the original motion in limine as compared to the hearing. Well, the scope of the motion was merely an offer of proof as to what those three... Well, actually, I should say there's the notice and then there's the motion in limine that's right within that proximity. I guess I didn't really articulate that well. One woman testified at the hearing, but there were three witnesses that were within the motion in limine. So what was the ruling? Are you appealing the finding that... I'm going to mispronounce her name... Angelita. Angelita. That Angelita was... That was the improper ruling or that the rest of the witnesses or both? I think it's just as to Angelita. I know maybe that there was some discrepancy in the briefing. So you're not contesting that, the other witnesses? No, I don't think the trial court made a finding that the other witnesses were precluded from testifying. Well, that's the issue. The order said motion in limine is denied in total. Oh, I see what you mean. So first of all, I want to know what it is, what is your position this morning? Okay. To be very clear then, because you're right, I forgot about that. We are contending that the entire, the trial court's entire ruling on the motion in limine was incorrect. It had no grounds to exclude this testimony of the victim's sibling or of the DCFS child protection investigator. Well, now you've segued into a murkier water because here is the problem that I'm having that I'd like you to clarify. Yes, you did have the three instances, you know, set forth in the motion. However, the court only ruled on two. The court never ruled on the belt incident. But then again, in looking at the briefs and the record, nobody in a motion would reconsider, as I understood it, pressed the belt incident. Okay? So how, is there an issue of forfeiture? How are we addressing something that you never asked the court to rule on? The court clearly ruled on two of the three incidents, didn't say anything about the third, didn't put it in order, and then the state never followed up and asked the court to rule on it. I think the state, in that sense, should have filed a motion to clarify the court's ruling. And they didn't. So where does that leave us? Where that leaves us is I think there's a significant amount of ambiguity in this record. I like that answer. Leave yourself open to maneuver. Well, no, it's not just a matter of maneuvering. I genuinely believe that. I think that there were a lot of issues raised. I think that the persons who wrote several of the written orders in this case didn't necessarily strictly comply with what was said by the trial court in its rulings. And, of course, we defer to the transcript. I think that while the written orders may say what they say, the substance of the ruling that we are attacking in front of this court is the trial court's ruling on Angelita Gist's testimony. Any written orders coming from that I think are a little bit inconsistent with Judge Patconi's actual ruling on the record. I think this whole thing began with defense counsel's challenge in front of Judge Foreman, his belief that Angelita had made inconsistent statements and, therefore, they wanted her to testify in front of the court. I think that led, whether it was Judge Patconi or Judge Foreman or whoever, I think that led to them calling her as a witness, which in my mind amounted to an improper deposition given the nature of the trial court's rule. I think we understand that. But, again, to try and pin you down on the third incident, since the trial court never specifically ruled or made any findings on the Belt incident, nor did the state file a motion to reconsider or clarify, how are we supposed to address the Belt incident? What are we reviewing? I think, well, it's tricky given the nature of the briefing, obviously. I think what this court should do is push the reset button, essentially. I think the state filed its motion, the state filed its notice and its motion to eliminate. There was a hearing only on one aspect of it. I don't think the trial court was in any position to then go on about the Belt incident, which was not the substance of Angelita's testimony. So I think the motions, the hearing, and the order don't line up. What I would ask this court to do is to reverse and remand, but to remand to the specific point in time after Angelita's testimony. Do we have to reverse and remand, or could we affirm and remand on the Belt incident? Is that an option? It's an option, but I think given the nature of the ruling, given that it was simply beyond the scope of the hearing, I wouldn't see any sufficient foundation for the trial court to have determined that the Belt incident was inappropriate. Right, but I'm saying there was a hearing. Angelita testified live. Why couldn't we just rule on the merits of the court's ruling on Angelita and the other? Why do we have to reverse on everything? I mean, depending on the arguments, maybe we're going to find that the trial court erred. But I'm saying, theoretically, I don't know. Just because the court didn't rule on the Belt incident, it mandates a reversal. What if we believe the trial court ruled correctly on the first two incidents? I see what you mean. Is that what I'm saying? Yeah. Remand for a finding on the Belt incident. My question may actually play into that a little bit. The trial court ordered Angelita to appear, correct? Judge formatted, yes. And then the state put Angelita on, though, correct? Directed her through whatever the state wanted to go through. Well, I... Judge Foreman didn't say justice to the incident of the punching in the stomach. No, he didn't. Just bring her in here because I want to hear what she has to say. And then looking at the notice, which is the 115-7.4C notice, under Angelita, it says, Also, Angelita will testify that she observed the defendant strike the victim with a belt for the same reason. Yes. So the state didn't bring up the Belt incident when Angelita was testifying. Correct. Even though it said that she was going to testify to these things. So why isn't that forfeiture, even from the get-go? I don't know that that necessarily would be a forfeiture issue. I mean, here the state was directed to do something. It was objecting all along to the process of calling Angelita in the first place. Which is not to say that it's wrong to call a witness into motion and eliminate context. I mean, obviously, you know, we all have some trial court familiarity. There may be some concerns about the witness's ability to stick to the script or whether she is competent to testify or whether she is able to testify about this particular incident with some precision. So I'm not saying that it was wrong necessarily for Judge Forman to order Judge Potconiac to take Angelita's testimony. I think everybody was focused on the punching incident as opposed to the belt. So in that sense, the parties didn't make the best record. I think you've also got, this is why I say you need a do-over. You've got inconsistencies between what the parties were asking for and what the court ultimately went on to evaluate. I don't think that the state, they simply weren't in a position at that point in time to make the best possible record. I mean, this is not a normal proceeding to have a witness testify in a motion to eliminate. But let's say the state brought the motion to eliminate. It was the state's motion to eliminate. You bring the motion, your obligation to put the witness on and to cover all your bases. The fact that you didn't do that, why would we in that limited circumstance, state's motion to eliminate because it's unusual, say, okay, you screwed up. We're going to send it back and let you do it again. All right. If you look at the supplemental record on page 5, the reason for having Angelita testify according to defense. So their response to the state's motion to eliminate, which wasn't in writing, but they said, Angelita made inconsistent statements and so we think she should be examined. In my personal opinion, I don't think that's a proper basis on which to conduct a witness examination in the context of a motion to eliminate. Which is not an issue before us. Agreed. We're attacking only the substance of Judge Potcomac's ruling. Right. And if the parameters of the evidence upon which he makes his rulings was for the state to bring forward, the fact that you didn't, why are you not forfeited for that? I mean, why should we, as you said, hit the reset button? I would ask you to relax the forfeiture rule in order to reach a just result. Not just because of what I think is the chaos that is apparent in the record, or at least the inconsistencies that are to me apparent in the record, but also because both the state and the defendant have a right to a fair trial. A motion to eliminate, particularly in a 115-7.4 situation, is to put the defendant on notice about what the state's case is going to be and why these prior incidents are relevant, the degree of similarity, etc. I think that the proper, I think Judge Potcomac simply just got led astray. Who led astray? I believe that the defense did, personally. Well, wait a second. Just to follow up on Justice Jorgensen's point, okay, the state files a motion eliminating, and they want the court to specifically rule on three incidents, correct? Yes. They present testimony from Angelita, and they don't address, let's say, the Belt incident, okay? Not only is there no evidence presented in support of the state's motion, but there's no argument made, the court doesn't rule on it, and there's no motion to reconsider or clarify. I mean, can't the state withdraw? I mean, I'm a trial judge, and nobody presents this, nobody argues the point. It could be a strategic move. Maybe the state decided, for all anybody knows, to not press this issue anymore. But how do we rule and how do we not find forfeiture if the state had the opportunity and never brought it up at the time of the hearing? I understand completely. Again, all I can do is ask, I mean, forfeiture. But you see the problem. Of course, I do. But, nevertheless, I don't think that the issue is beyond this court's purview to reach it, to relax the forfeiture rule. In essence, to order a new hearing or to order that the hearing be conducted. If we relax the forfeiture rule, we make a decision. We allow a resolution of the issue before us. You're asking us to take an additional step and say this record basically is so jazzed up, you need to go back and recreate a record and have a second bite at the apple. That's two different things. I understand. I would submit that this is an extraordinary circumstance. Because? Not only given the nature of the case, but given the nature of the hearing below. I think the assistance, I think everybody involved was caught off guard. I know for a fact that the trial assistants certainly were. I believe you all from your prior experiences know, as trial court judges, that this type of a hearing, a hearing on a motion to eliminate, where the state has already made an offer of proof, is a little bit unusual. Nonetheless, the state didn't object to that. They didn't appeal that issue. They have not included that in its brief to say, and oh, by the way, from the get-go, you should not have to put this witness on. So that's water under the bridge. This is what we've got. Let me be clear then. If this court wants to look at it as water under the bridge, obviously forfeiture is forfeiture, and we're bound by that. No, I'm just saying the fact that you didn't object to the procedure in total to say, you know, we're on appeal. We're raising whether it was proper for Judge Foreman to have even ordered this hearing. You didn't raise that issue. I'm sorry. I'm not saying that it's improper for the hearing to have commenced. I think the parameters of the hearing were so poorly constructed. That was poorly constructed by the state. It was your motion. It was your written motion. Well, it was also the defense's response that basically resulted in the testimony of Angelita. I mean, the defense said, it's not that we're concerned about this witness's ability to behave herself in the courtroom. We're concerned about the belt incident. I mean, there were no specific bases other than defense counsel saying she made inconsistent statements and we want her to testify at the motion to eliminate hearing. And while I have no problem with a trial court judge, of course, hearing testimony from a witness in the context of a motion to eliminate hearing, I do have a significant problem when the trial court judge believes that it's his or her purview to rule on the credibility of the witness or whether or not the incident ultimately occurred. I think that separates perfectly into the next point. For the record, forfeiture aside, which we have to decide. Sure. As I understand it, one of the specific things you're contending is that the court excluded the evidence solely based on its unfavorable opinion of Angelita's credibility, which you're contending is not a proper factor. So were you deriving that conclusion from the courtroom solely on the basis of finding her not to be credible? Well, the trial court's initial explanation of its decision is that, you know, based on certain factors that Angelita had originally reported this to the police, her equivocal description of the punch and her, when they were sitting on the bed, and her proximity to it, the trial court simply made a credibility ruling. It later on doubled down and said, no, this is more unfairly prejudicial than probative. But I believe that the entirety of the trial court's ruling stems from its credibility ruling. What's the difference between credibility and reliability? Reliability goes to the circumstances under which the statement was made. To me, reliability would be more of an objective factor. Isn't it an objective factor that the statement was made after her children were taken away? That's true. The trial court seemed to rely on that. That seems to be other facts and circumstances under 7.4 that a court might consider as to whether or not a statement is reliable. That's true. Again, I would submit to you that the entirety of what followed Judge Patconi's actual ruling was tied to his determination that Angelita Gist was not a credible witness. Can we look at the actual ruling? I think that's important. I think you're correct that the court sort of commented unfavorably on Angelita's credibility. However, its actual ruling was that Angelita did not actually see defendant strike the victim. How do you respond to this? The court specifically stated in the transcript, she testified that throughout the time they were trying to do this, she never witnessed the defendant striking the victim or making any visible contact with the victim because defendant was between her and the victim. I think you can thus argue that the court assumed the truth of her testimony but nevertheless found the evidence unreliable based on what was observed. That, of course, is one way to look at it. Another way to look at it is to say that the court's ruling is ambiguous and this court, as the Fort District did in People v. Ware, could send the case back and ask the trial court to clarify its ruling. Was this a reliability ruling or was this a credibility ruling? I think the record is sufficiently ambiguous to permit either inference. To the extent that this was a credibility ruling, it was per se improper. To the extent that this was a reliability ruling, that the trial court's belief that because of the witness's potential motive to lie, bias, all those things that are relevant to a reliability ruling, I think those issues need to be shored up. I think there needs to be greater detail. If the trial court is going to prevent the state from offering testimony that is so probative, simply put, I don't see the trial court's ruling there. Isn't it only probative if she actually saw something? Well, whether or not she actually saw it, yeah. I appreciate him putting in somewhat of a catch-22, but you're right. This is not a good record. It is not clear, but nonetheless, what's your response? I'm sorry, what's my response to? You know, what? Now I've lost my train of thought. I'm sorry. That'll come back to me. Go ahead. Okay. I know that my time has expired. I mean, if you have any further questions. Thank you. Thank you. Ms. DeWitt, you may proceed. First of all, regarding forfeiture, there is an alternative scenario here. Judge, the first hearing on the motion in limine was in front of Judge Foreman. He ordered Angelita's testimony to be taken. We don't know what else was conducted, what happened at that hearing, if he even made a partial ruling, because the state hasn't provided that transcript. Now, the motion we consider only dealt with Angelita, and also the state's attorney wrote the written order saying that the motion in limine was denied in total. So the record isn't ambiguous. Any ambiguity is because of an incomplete record, not because of anything that the defendant did. Secondly, the statute, the other crime statute, specifically says that it must be, or actually the Supreme Court has said that that statute must be narrowly construed in the defendant's favor. Third, regarding the state in their reply brief, and today, seems to want to separate probative value, reliability, from credibility. And they rely on people versus where and Idaho versus right in their reply brief. Those are hearsay cases in which you have a hearsay declarant saying something. So the reliability of that declarant is at issue. Then you have the person, the witness who's testifying and their credibility. And the court, those are obviously two different things. We don't have that here. We have Angelita's testimony regarding an incident that her own personal observation, her reliability and her credibility are, can't be separated. The probative value, the state concedes in their reply brief that trustworthiness is a factor to, trustworthiness and credibility factor into reliability. Well, you're not conceding. The court didn't really make a determination based on credibility in this case, did it? Right. If I say I find the evidence, is it admissible because I find that Angelita is not credible? Didn't the court say that basically Angelita really didn't testify to anything specific because she didn't see anything specific? Right. Not only, yes. The state is trying to use a very slim thread of other crimes testimony to shore up a case on which they have even less evidence. And in determining whether or not the probative value outweighs the substantial prejudice, this court has said, you look at both. And here we have very limited testimony from Angelita. I didn't, she says, I didn't see it. I don't know if it was an open hand, closed fist. I don't know. I didn't see it. And then as far as the evidence on the charge defense and that and how prejudicial the other crimes would be, you have no witnesses. And, in fact, I want to make a comment on one part of the state's argument, a statement that they make on page 15 of their opening brief. They state, they seem to allude to or try to say that the defendant made a statement that he punched the child as far as the charge defense. And they say at some point. And they seem to be inferring that there's a relationship between contact with the child and the minor's injuries. But if your honors look at pages three and four of their brief, and that's taken from the actual motion in limine. The contact was after the child, the defendant saw the child in respiratory distress, bleeding from the nose. And he said he, for some reason, the state says punched. But Angelita, according to the motion, came in and saw the defendant pressing on the child's chest, which to me sounds like CPR. And it was certainly after the child's injuries had occurred. So they don't have an admission from the defendant regarding the charge defense, according to my reading. And therefore, they don't have any witnesses. And as we point out in our brief, the state's own medical expert compelled the state to file a motion to get my client and Angelita to have EKGs. Because they suspected a congenital heart problem as the cause of the minor, the child's distress and injuries. And the EKG showed, according to the motion that defense counsel filed for a reduction of bond, showed that my client suffers from, has the genetic trait for Bugatta syndrome, which is a congenital heart, serious congenital heart condition. And in the motion which defense counsel filed asking for a recalc bond, he said that there are serious issues as to causation in this case. And that recalc bond was granted. So they're trying to piggyback the other crimes evidence, which must be kept out unless the probative value outweighs the substantial prejudice, narrowly construed in the defendant's favor. And Judge Poconiac said, I don't find that the probative value does outweigh the substantial prejudice. He specifically said it was more prejudicial than probative. Right. And the standard of review is abuse of discretion. The state concedes in its reply brief that they don't question the judge's ability to hear the evidence. Well, that's a meaningless exercise. If a judge can hear evidence, but he's not allowed to assess the evidence, then what's the point? So it's not the judge didn't misapply the law. He heard the evidence, which the state says he could hear. And then he assessed it. And part of assessing it is determining, is it reliable? Well, is it credible? We ask that you affirm your honors and not send it back. What's your take on the belt incident? Was it forfeited? Yes, I believe they have forfeited for the reasons that they didn't bring it up in their motion to reconsider. And the defense raised forfeiture in our brief. And in the reply brief, the state did not respond. Plus, given the fact that there is no transcript of Judge Foreman's, you know, that first hearing, I'm not saying something did happen. I don't know. We don't have that record. But in the context of Angelita's testimony, anything that was not brought up, which would be bounded by the four corners of the motion eliminate, anything they didn't raise, that's forfeited. And also, beyond that, I think we don't know, because the hearing before Judge Foreman isn't in the record, and because the state's attorney wrote the written order and said, denied in toto, I think you put everything together. I don't know that this court can say that there's a basis for reviewing that ruling that the state has provided. Just to clarify, so you're saying, in essence, to pin this thing down, at the conclusion of the hearing on the motion eliminating the state, never asked the court to rule on the Belt incident, correct? Right. When they filed a motion to reconsider and clarify, they never asked the court to rule on the Belt incident, correct? Right. Okay. Thank you, Your Honors. Thank you. Mr. Jacobson, rebuttal argument. I know we should use our discretion and find the forfeiture. It's not lying. I couldn't have said it better myself. Okay. I don't want you to have to rehash that. Thank you, Your Honor. I appreciate that. Respectfully, I don't think that the issue in front of this court has anything to do with what the parties might present regarding causation at trial. This is solely a question of the propriety of the trial court's ruling on a pretrial motion eliminate. So, that said, while I appreciate Mr. Wood's argument, I think a lot of those things are premature. What will be presented at trial is exactly what we're trying to hash out in front of this court regarding propensity evidence. That's it. Where's the abuse of discretion in finding that Angelita's testimony was not probative? Was not probative. I almost think that that's contrary to the manifest way of the evidence in a sense. Angelita testified originally that she saw the defendant strike William Giss Jr. Wait a minute. You say testified? Yes. In a statement? Not on the day of the motion eliminate? No, on the day of the motion eliminate. She said, I was sitting on the bed. Victim couldn't pronounce his name correctly. Defendant punched him. Then later on, it was an open fist or a closed fist. All these other things that did chip away at her credibility, which is more in the vogue of a witness examination at trial. Credibility or observations that she really didn't see the striking. I mean, that was a fair conclusion. She never actually saw the content. I think that's one possible conclusion. I think she was equivocal. She testified originally. It's a possible conclusion. To get back to my question, why is that an abuse of discretion? It sounds like you're asking us to review this record and say, gee, if we were the trial judge, we would have found this. First of all, the perspective that was laid out in the briefs is that the trial court judge misapplied the law when ruling on Angelita's testimony in the first place. So that would engender de novo review. I think under any standard of review, the trial court's ruling was incorrect. Merely because Angelita testified, her first bit of testimony on direct differed from the next version of the events that she's told, differed from the next version of the events that she told on cross. Those are not things that cut against the reliability. I mean, look, they're all bad, okay, but none of them prevent her from being a reliable witness at trial. The reason that we have witness examinations and motions in limine, other than 11510 situations, is usually out of concern that the witness is not going to be able to control him or herself in the courtroom or whether or not the individual is a competent witness to testify. The type of inquiry that occurred in this case is beyond the bounds of any reasonable type of witness examination in a motion in limine. This was trial testimony. I think the assistants approached it wrong. I think the defense approached it wrong. I think the trial court judge approached it wrong. Let's assume that, and you maintain your position, a trial court blurred the distinction between reliability and credibility. The final question is, we can affirm on any basis in the record, correct? Correct. Shouldn't the court specifically enunciate several times in the motion that we consider that, look, notwithstanding, I find that the prejudice substantially outweighs the probative value of this evidence? On that front, I would submit the trial court was incorrect. Okay. But that is also an alternative basis, correct? Exactly. The trial court could have believed the incident happened, could it not, and actually saw a striking and still found that the prejudicial value of that in light of the whole context of the circumstances was outweighed by the prejudice. Even if the court found there was a striking, it didn't have to allow this evidence in, did it? No, I don't think it was compelled to. I think it was unreasonable not to. Right. I just want to clarify. That's an abuse, clear abuse of discretion standard. Yes. But like I said, whether it's de novo abuse of discretion or a manifest way to the evidence because the trial court heard testimony, I think under any standard of review, because of the way this examination was conducted, because of the nature of the trial court's ruling, I would submit that it ultimately is unsustainable. I would ask this court, I understand how this case could have very easily gone off the rails. I think you are presented with an ambiguous record. To the extent that you don't want to reverse and remand this case, I would ask you to send it back for clarification so that we can definitively state, well, what was the trial court's ruling? Because it did vacillate between credibility and reliability. And if the trial court wanted to credit Angelita's testimony and then later on use that as an alternative basis for its ruling, I don't think that we would have to have this type of debate about, well, what was exactly the nature of the trial court's ruling in this case? So in the face of an ambiguous record, poorly constructed or otherwise, I simply put would ask this court to join me in saying that the decision of the trial court was unsustainable. Just very briefly, if I can touch on the missing transcript from when Judge Foreman ordered, I don't see what relevance that has. I mean, nobody is disputing Judge Foreman's ability to send the case down the hall for another judge to hear it. The procedural nuances of this case, while unusual, are not the issue in front of this court. The issue in front of this court is whether or not this court should affirm the trial court's ruling. I would submit to you that you should reverse and remand. The only thing I wonder is whether the parameters of Angelita's testimony at the hearing were discussed in front of Judge Foreman, which would weigh on the spelt incident and everything else. It might. I can tell you what I know only from examining the assistants in this case, that that's not what happened. I mean, I understand Fouch is Fouch. It's our obligation to present the record, and it would be nice if we all had the transcript. That all notwithstanding, that wasn't discussed. Otherwise, presumably, that would have been in the record, if it was helpful to your appeal, right? What we asked for and what we ultimately get from certain court clerks are two different things. Like I said, it would be nice. I mean, you have defense counsel's statement about he wanted Angelita to testify because she had given inconsistent statements. I believe that this was defense counsel's tactic to get Angelita on the stand, to conduct an improper deposition, to impeach her in any way possible. And in short, like I said, it's an improper deposition. The defense had subpoenas. If they wanted to put paper on Angelita, they could have done that at any given time. I don't see why they had to do it in the context of a motion in limine. And I don't think, ultimately, that this is a procedure that should be condoned and the trial court's ruling can be affirmed. I ask this court, as a matter of whether you want to look at it as a relaxation of the forfeiture rule or a generous reading of the record or an attempt to resolve the ambiguities in the record, I would submit to you that all of those factors militate reversal in this case. I think everybody should have the opportunity to present their case. I think here the state was denied that opportunity. I'd like to thank the attorneys. Mr. Witt had to argue two cases today. Thank you very much. That's not easy. Mr. Jacobson had to pick up the ball and run with it in a case that wasn't his. And that's not easy. So thank you both very much. Thank you, Your Honor. We're adjourned.